BASSIL ET AL. v. LOFFER ET AL.

**Descent:** FROM CHILD TO ANCESTOR. The heirs of the father and mother of a deceased intestate, who leaves neither wife nor issue, under section 2497 of the Revision, inherit the same as they would have done if both parents had survived the intestate, and each died in possession of one-half of the estate.

*Appeal from Keokuk District Court.*

FRIDAY, JUNE 12.

THIS action is brought to obtain partition of certain real property, in which the plaintiffs claim to be the owners of an undivided one-half interest, and which they allege the defendants to be owners of the other undivided one-half interest. From the overruling of a demurrer to the petition defendants appeal. The further facts of the case appear in the opinion.

*C. M. Holton*, and *Clark & Haddock*, for appellants.

*Woodin & McJunkin*, for appellee.

MILLER, CH. J.—The statements of the petition show that the plaintiffs are husband and wife and have so been for thirty years past; that on the 20th day of August, 1866, one Reason P. Loffer intermarried with Mollie S. Bassil, the daughter of plaintiffs, to whom was afterwards born as the fruit of said marriage one child only who was named Milo J. Loffer; that

on the 5th day of October, 1868, said Reason P. Loffer became the owner in fee of the west half of the east half of the northeast quarter of Section 9, Tp. 75, Range, 12 west; that on the 8th day of February, 1873, the said Mollie, wife of said Reason P. Loffer, died intestate; that on the 26th day of February, 1873, said Reason P. Loffer died intestate, leaving as his only heir at law the said child Milo J. Loffer, who on the 30th day of March, 1873, died intestate, still the owner of said real estate, and unmarried and without issue. It is further alleged that the parents of Reason P. Loffer died prior to his death, and that the defendants are his only brothers and sister.

To this petition the defendants demurred on the ground that the facts stated show that the defendants inherited the whole of the lands in controversy. The overruling of this demurrer is the only assigned error.

The question raised by the demurrer is whether the plaintiffs, who are the maternal grand parents of the deceased child, Milo J. Loffer, inherited, upon his death, the one-half of the land in controversy, or, whether the whole estate descended to the brothers and sister of the father of the deceased child. The determination of this question involves a construction of certain sections of the Revision, as follows:

"Section 2495. If the intestate have no issue, the one-half of his estate shall go to his parents and the other half to his wife; if he leave no wife, the portion which would have gone to her shall go to his parents."

"Sec. 2496. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent, including the portion which would have belonged to the intestate's wife had she been living."

"Sec. 2497. If both parents be dead, the portion which would have fallen to their share or to either of them by the above rules, shall be disposed of in the same manner as if they or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors."

It will be observed that all of the contingencies mentioned in these sections of the statute, had happened at the time of the death of the child, Milo J. Loffer, through whom both parties claim. He died without issue, he left no wife, and both parents were dead prior to his decease. To whom then did the land owned by him at the time of his death descend? This we must determine from section 2497, above set out, for it professes to give us an answer to this question. If it did so in plain and unambiguous language there would be no room for construction, nor difficulty in the solution of the question involved. But on the contrary, of all the provisions of our obscure and uncertain statutes in respect to the descent of property, this section is perhaps the most difficult to understand and interpret. We connot find a satisfactory answer to our question in this section, without considering in connection therewith other provisions in *pari materia*, and also the law as it stood before the enactment of this section 2497, in order to be able to ascertain, if we can, the legislative intention.

By the Code of 1851, it was provided as follows:

"Sec. 1410. If the intestate leave no issue, the one-half of his estate (including the dower of the wife,) shall go to his *father*, and the other half to his wife; and if he leave no wife nor issue, the *whole* shall go to his *father*."

"Sec. 1411. If his father be previously dead, the portion which would have fallen to his share by the above rules, shall be disposed of in the same manner as though he had outlived the intestate, and died in the possession and ownership of the portion thus falling to his share, and so on through each ascending ancestor and his issue, unless heirs are sooner found."

Under section 1410, above, the mother of the intestate did not inherit any of his estate; when he left neither wife nor issue, the whole went to the father, and if the intestate left a wife but no issue, the father took one-half the estate and the wife the other half, nothing going to the mother. Nor did the inheritance pass through the mother under the next section.

These sections were, by chapter 63, Laws of the Seventh General Assembly, repealed, and the sections above quoted from the Revision were then enacted. Under Sec. 2595, one

half of the intestate's estate goes to the parents if he leaves
no issue, and if he leaves neither issue nor wife, the whole
goes to the parents—father and mother equally.   By the next
section, if one of the parents be dead the estate goes to the
survivor.   The repeal of the sections of the Code of 1851, and
the enactment of the sections of the Revision referred to,
evinced a most clear and unmistakable intention on the part
of the legislature to change the rule of descent, so that instead
of it passing alone to or through the father of the deceased, it
should go to or through father and mother alike.

These sections of the Revision, being originally part of the
same act with § 2497, and it being manifest that it was the
DESCENT: intention of the legislature, in the passage of this
from child to
ancestor. act, to change the rule of descent as contained in
the Code of 1851, and which this act repealed, we must
construe this section (2497) in the light of this legislative
intention.   When we do this we find the true meaning of this
section to be that, if both the parents of the intestate be dead,
the portion which would have fallen to their shares respect-
ively by the rules of the preceding sections, shall be disposed
of in the same manner as if they had both outlived the intes-
tate, and died in the possession and ownership of the portion
falling to their respective shares, and so on through ascending
ancestors and their heirs.

We are aware that we do not, by this construction, give to
the words, "or to either of them," which occur in this section,
the force and meaning claimed by appellant's counsel.   There
is no greater foundation or warrant for applying these words
to the parent last dying before the death of the intestate than
to the one first dying.   When both of the parents are dead
before the decease of the intestate casting the descent, it is
impossible to apply these words to one to the exclusion of the
other, for they apply equally to both.   It is urged, however,
that under § 2438 of the Revision the male line must be pre-
ferred.   That section is as follows:   "If heirs are not
found in the male line, the portion thus inherited shall go to
the mother of the intestate and to her heirs, following the
same rule as above prescribed."   This section was § 1412 of

the Code of 1851 and was a qualification of the rule contained in the two preceding sections, 1410 and 1411, under which the father to the exclusion of the mother inherited from an intestate child. This section allowed the mother and her heirs to take when no heirs were found in the male line. It was a necessary qualification of the rule in order to prevent the property from escheating. When, however, §§ 1410 and 1411, which embodied the rule, were repealed, and the act of 1858 passed establishing a different rule, § 2438 (1412) had no connection with or pertinency to the new rule, and that it was not also repealed at the time of the repeal of §§ 1410 and 1411, was clearly an omission. It was however repealed by chapter 7, laws of 1870, which was prior to the death of the intestate, Milo J. Loffer, or that of either of his parents, and was no part of the statute at the time of the descent cast.

The provisions of § 2498 of the Revision that if the mother be the surviving parent as contemplated in § 2496, she shall take only a life estate in the intestate's property, etc., affords no argument against the view we have taken of the preceding section, but rather confirms it, for it is clear that the legislature understood that without this provision of § 2498, the mother would take a fee simple precisely as the father would under § 2496, thus confirming the view that the act of 1858, containing all these provisions, was intended to place the mother and father of an intestate upon the same inheritable ground, except so far as otherwise declared in the act itself.

Our conclusion is that the demurrer was properly overruled and that the judgment must be

AFFIRMED.